## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02490-MSK-CBS

ARTHUR BUNDY,

    Plaintiff,

v.

JOE STOMMEL,
JOSEPH ORTIZ,
MICHAEL DUNLAP,
BURL McCULLAR, and
DWIGHT MARTINEZ,

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 2 1 2006

GREGORY C. LANGHAM
CLERK

---

### UNOPPOSED AND AMENDED PRISONER COMPLAINT

Plaintiff Arthur Bundy, pro'se, respectfully submits this Unopposed and Amended Prisoner Complaint, pursuant to 42 U.S.C. § 1983, pursuant to Federal Rules of Civil Procedure Rule 15(a), pursuant to the Order from this honorable District Court dated June 27, 2006. Where this Court authorized the Office of the Attorney General for the State of Colorado an Extension of Time, to facilitate the Plaintiff's filing of his amended complaint.

Respectfully Submitted,

Arthur Bundy, 67766
KCCC - BA113
P.O. Box 2000
Burlington, CO 80807

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.    04-cv-02490-MSK-CBS

(To be supplied by the court)

ARTHUR BUNDY

_____, Plaintiff,

v.

JOE STOMMEL

_____,

JOSEPH ORTIZ                              JURY TRIAL DEMANDED

_____,

MICHAEL DUNLAP

_____,

BURL McCULLAR

_____,

DWIGHT MARTINEZ

_____,

_____,

_____,

_____, Defendant(s).

(List each named defendant on a separate line.)

_____

### AMENDED PRISONER COMPLAINT
_____

(Rev. 4/15/02)

## A. PARTIES

1. Arthur Bundy, # 67766, Kit Carson Correctional Center,
   (Plaintiff's name, prisoner identification number, and complete mailing address)
   P.O. Box 2000, Burlington, CO 80807

2. Joe Stommel, SOTMP Administrator, CDOC, P.O. Box 3000
   (Name, title, and address of first defendant)
   Canon City, CO 81215-0300

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No (CHECK ONE). Briefly explain your answer:

   Stommel was resonsible for the system-wide clinical function and

   administration of the SOTMP, and is sued in his official capacity.

3. Joseph Ortiz, Executive Director, CDOC, 2862 S. Circle Drive,
   (Name, title, and address of second defendant)
   Colorado Springs, CO 80906

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No (CHECK ONE). Briefly explain your answer:

   Ortiz is responsible for managing, supervising, and controlling CDOC

   and is being sued in his official capacity.

4. Michael Dunlap, SOTMP Coordinator, CDOC, P.O. Box 300, Canon City, CO
   (Name, title, and address of third defendant)
   81215-0300

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No (CHECK ONE). Briefly explain your answer:

   Dunlap has supervisory responsibility in the SOTMP at Arrowhead

   Correctional Center, and is sued in his official capacity.

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 4/15/02)                                        2

## A. PARTIES

5. Burl McCullar, senior Therapist, SOTMP, CDOC, P.O. Box 0300

Canon City, CO 81215-0300

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No

McCullar was senior therapist responsible with helping to provide

treatment to Plaintiff, and is sued in his official capacity.

6. Dwight Martinez, Primary Therapist, SOTMP, CDOC, P.O. Box 0300

Canon City, CO 81215-0300

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No

Martinez was responsible for determining Plaintiff's specific treatment

needs, and is sued in his official capacity.

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

   XXX   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

   ____   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

   _____

   _____

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

This is a civil rights action filed by Arthur Bundy, a state prisoner, for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging (1) that the actions and policy of the Defendants requiring Plaintiff to comply with recommended administration of psychotropic medication as a condition of his participation in sex offense-specific treatment violate Plaintiff's procedural due process rights to refuse unwanted administration of medication under the Fourteenth Amendment to the United States Constitution; and (2) that the defendant's administrative policy requiring Plaintiff's submission to unwanted medication as a condition of sex offender treatment, as applied to Plaintiff, is overly broad and imposes restrictions upon Plaintiff's right to avoid the unwanted administration of medications that are not reasonably related to legitimate penological interests, and thereby violates Plaintiff's right under the Fourteenth Amendment to the United States Constitution.

(Rev. 4/15/02)                     3

# D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.    Claim One: ___Violation of the Fourteenth Amendment Right to___
___avoid the unwanted administration of medication___

   Supporting Facts:

   1. Defendant Stommel, Ortiz, Dunlap, McCullar and Martinez restricted Plaintiff's right to avoid the unwanted administration of unwanted medication requiring Plaintiff to comply with recommended medication as condition of his participation in sex offense-specific treatment, in a manner that raises due process issues.

   2. The District of Colorado is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

   3. Plaintiff Arthur Bundy is a state prisoner of the Colorado Department of Corrections.

   4. Defendant Joe Stommel is the Sex Offender Treatment and Monitoring Program Administrator for the Colorado Department of Corrections. Mr. Stommel is responsible for the system-wide procedures regarding sex offender treatment in the Department of Corrections, and is sued in his official capacity.

   5. Defendant Joseph Ortiz is the Executive Director of the Colorado Department of Corrections. Mr. Ortiz is responsible for managing, supervising, and controlling the correctional institutions operated and supported by the State of Colorado, as well as for developing policies and procedures governing the operation of the Colorado Department of Corrections, and is sued in his official capacity.

(Rev. 4/15/02)                          4

### D. CAUSE OF ACTION

6. Defendant Michael Dunlap was the Sex Offender Treatment and Monitoring Program Coordinator at all times relevant to the events and omissions set forth herein. Mr. Dunlap had supervisory responsibility in the Sex Offender Treatment and Monitoring Program's Therapeutic Community at the Arrowhead Correctional Center during the relevant times, and is sued in his official capacity.

7. Defendant Burl McCullar was a Senior Therapist in the Sex Offender Treatment and Monitoring Program's Therapeutic Community at the Arrowhead Correctional Center at all times relevant to the events and omissions set forth herein. Mr. McCullar was responsible for providing sex offense-specific treatment during the relevant times, and is sued in his official capacity.

8. Defendant Dwight Martinez was Plaintiff's Primary Therapist at all times relevant to the events and omissions set forth herein. Mr. Martinez was responsible for determining Plaintiff's specific treatment needs while Plaintiff was participating in Phase II treatment program at the Arrowhead Correctional Center, as well as for evaluating Plaintiff's progress in such treatment, and is sued in his official capacity.

9. At all times relevant to the events and omissions described herein, all defendants acted and continue to act under the color of state law.

### Relevant History

10. On April 9, 1992, Plaintiff had pled guilty to the offense of Sexual Assault in the First Degree, and was sentenced to the Department of Corrections for a term of twenty-two years.

11. Plaintiff was incarcerated at the Colorado Department of Correction's Fremont Correctional Facility near Canon City, Colorado during the initial events described herein, and was subsequently transferred to the Colorado

4.1

Department of Correction's Arrowhead Correctional Center near
Canon City, Colorado where he remained incarcerated during the remainder
of the events and omissions described herein.

12. Colorado Department of Corrections administrative regulations,
policies, and practices require Plaintiff to participate in the sex offense-
specific treatment provided by the Sex Offender Treatment and Monitoring
Program in order to be considered eligible for placement in Community
Corrections.

13. Additionally, Plaintiff was informed by members of the Colorado
State Board of Parole that he must participate in the Sex Offender Treatment
and Monitoring Program in order to be considered by the parole board for
release on parole. Plaintiff attach as Exhibit 1 a true and accurate copy
of a letter from a member of the parole board in support of this averment.

14. The sex offense-specific treatment provided by the Sex Offender
Treatment and Monitoring Program consists in part of two phases of treatment,
namely Phase I and Phase II.

15. Plaintiff successfully completed the Phase I treatment on February
2, 2000, while incarcerated at the Fremont Correctional Facility.

16. In order to be eligible for participation in Phase II of the Sex
Offender Treatment and Monitoring Program, Plaintiff was required to sign
a "TC Contract". Paragraph (13) of this TC Contract states "You shall comply
with recommended medication when it has been determined, after evaluation
from a DOC psychiatrist or physician, that a specific medication may enhance
your ability to benefit from treatment and/or reduce your risk to re-offend."
Plaintiff attaches as Exhibit 2 a true and accurate copy of this TC Contract.

17. Upon information and belief, Plaintiff's alteration of or refusal
to sign the TC Contract described in paragraph (16) above would have rendered

4.2

### D. CAUSE OF ACTION

him eligible for participation in Phase II treatment.

18. Plaintiff signed the TC Contract under duress on February 2, 2000.

19. Plaintiff was subsequently transferred to the Arrowhead Correctional Center, and began participation in Phase II treatment, on February 24, 2000.

20. As part of the treatment provided by the Sex Offender Treatment and Monitoring Program, while at the Arrowhead Correctional Center Plaintiff voluntarily underwent an evaluation by a Department of Corrections psychiatrist, Dr. Ronald Smyrl. Following this evaluation, Dr. Smyrl diagnosed Plaintiff as suffering from Obsessive-Compulsive Disorder with deviant fantasies, and prescribed the medication Zoloft to treat plaintiff's disorder, on September 9, 2000.

21. At the time that Plaintiff signed the TC Contract described in paragraph (16) above, he was not taking any psychotropic medications.

22. Following the recommendation by Dr. Smyrl that plaintiff be administered Zoloft, and Plaintiff had agreed to accept the medication Zoloft, he was compelled thereafter to submit to the continued administration of Zoloft due to the condition in the TC Contract which required him to comply with recommended medications as a condition of his participation in Phase II.

23. During the period beginning September 6, 2000 and ending on November 26, 2002, Plaintiff took the medication Zoloft as prescribed. Plaintiff perceived Zoloft to be beneficial, with no serious side-effects.

24. During the time period described in paragraph (23), Plaintiff participated in Phase II treatment and progressed in Phase II treatment to an advanced level of participation referred to by the staff of the Sex Offender Treatment and Monitoring Program as "Commitment Level".

### D. CAUSE OF ACTION

25. The Commitment Level of participation referred to in paragraph (24) above is understood by staff and participants of the Sex Offender Treatment and Monitoring Program to be an indication of an offender's desire to pursue treatment goals in order to change his thinking process, changing his subsequent behavior, and hence to commit no more sex offenses.

26. As a result of Plaintiff's progession in the Phase II treatment program and his achievement of Commitment Level, Plaintiff was being considered a strong canidate for community/parole placement by the Sex Offender Treatment and Monitoring Program staff, from around June of 2002, foreward.

### Forced Change in Medication

### Giving Rise to Causes of Action

27. On or about June of 2002, Michael Dunlap informed inmates participating in the Phase II treatment program at Arrowhead Correctional Center, including Plaintiff, that inmates taking Zoloft would be expected to comply with prescription changes from Zoloft to substitute medications as a result of changes being made by the Colorado Department of Corrections.

28. During the weeks immediately following the communication by Michael Dunlap described in paragraph (27) above, Plaintiff repeatedly communicated to staff of the Sex Offender Treatment and Monitoring Program, including but not limited to Dwight Martinez, his reluctance to switch to another medication from Zoloft.

29. At no time during or after Plaintiff's expressions regarding his reluctance to switch to another medication, as described in paragraph (28)

### D. CAUSE OF ACTION

above, did staff of the Sex Offender Treatment and Monitoring Program explain
to the Plaintiff his right to refuse to take a medication other than Zoloft.

30. Rather, staff of the Sex Offender Treatment and Monitoring Program,
including but not limited to Burl McCullar and Dwight Martinez, responded
to Plaintiff's expressed reluctance concerning changing from Zoloft by
emphasising to Plaintiff that as he was under consideration for placement
in community corrections placement, he should avoid doing anything that might
raise doubts about his placement.

31. On November 26, 2002, Plaintiff met with Colorado Department of
Corrections Nurse Practioner Loraine Gilley concerning the substitution of
Prozac for Plaintiff's prescription to Zoloft.

32. During his meeting with Nurse Practioner Gilley, described in
paragraph (31) above, Plaintiff repeatedly expressed his reluctance to switch
from Zoloft to Prozac. Plaintiff attaches as Exhibit 3 a true and accurate
copy of a writing by Nurse Practioner Gilley which documents Plaintiff's
expressed reluctance to change medications.

33. As a direct result of the condition of the TC Contract described
in paragraph (18) above which required Plaintiff to comply with recommended
medications as a condition of his participation in Phase II treatment,
Plaintiff was compelled to submit to substitution of Prozac for Zoloft by
Nurse Practioner Gilley, despite Plaintiff's wishes otherwise.

34. Had the Plaintiff exercised his right to refuse unwanted medication
and refused the substitution of Prozac for Zoloft by Nurse Practioner Gilley,
his refusal would have been considered by the staff of the Sex Offender
Treatment and Monitoring Program to be a violation of the terms

### D. CAUSE OF ACTION

and conditions of the TC Contract, thereby subjecting Plaintiff to possible removal from consideration for placement in Community Corrections and termination from Phase II treatment.

35. In the months following Plaintiff's change in medication to Prozac from Zoloft, Plaintiff experienced numerous negative side-effects associated with Prozac, including but not limited to migraine headaches, rashes on his arms, loss of appetite, sleep difficulties, complications with a cold that led to a lung and urinary tract infection, irritibility, paranoia, confusion, and agression.

36. Plaintiff repeatedly communicated to staff of the Sex Offender Treatment and Monitoring Program the fact that he was experiencing serious negative side-effects from Prozac. Plaintiff attaches as Exhibits 4, 5, and 6 true and accurate copies of documents from his Colorado Department of Corrections mental health file which document his communications to said staff regarding the problems he was experiencing with Prozac.

37. At no time during or following the communications from Plaintiff regarding the problems he was experiencing with Prozac did staff of the Sex Offender Treatment and Monitoring Program indicate to Plaintiff that he could exercise his right to avoid unwanted medication and cease taking the medication.

38. Rather, on April 14, 2003, in response to Plaintiff's communicated problems with Prozac, Dwight Martinez verbally informed Plaintiff that he was contractually obligated to take prescribed medications.

39. Additionally, and without consulting a psychiatrist or physician concerning the possibility of negative side-effects from Prozac, staff of the Sex Offender Treatment and Monitroing Program treatment team, including

### D. CAUSE OF ACTION

but not limited to Dwight Martinez, asserted to Plaintiff that the behavioral problems he was experiencing were not the result of side-effects from Prozac. Following these communications by staff, Plaintiff was removed from consideration for placement in Community Corrections.

40. On April 21, 2004, Plaintiff was terminated from Phase II treatment for aggressive behavior that was determined by staff of the Sex Offender Treatment and Monitoring Program to be an implied threat, and subsequently transferred from the Arrowhead Correctional Center to the Kit Carson Correctional Center, a private prison that does not offer treatment under the Sex Offender Treatment and Monitoring Program.

41. Following his transfer to Kit Carson Correctional Center, Plaintiff sought medical treatment for the negative side-effects he was experiencing from Prozac. On or about May 4, 2003, Dr . Freda, a contract physician for the Corrections Corporation of America which operates the Kit Carson Correctional Center, removed Plaintiff from Prozac treatment and re-prescribed Zoloft. The negative side-effects experienced by Plaintiff subsequently disappeared, and Plaintiff again perceived his treatment with Zoloft to be beneficial with no serious side-effects.

### Exhaustion of Administrative Remedies

42. Plaintiff fully exhausted all administrative remedies with respect to the claims raised herein. Specifically, on May 2, 2003, Plaintiff timely filed an Informal Resolution Attempt in accordance with Colorado Department of Corrections grievance policy. In this informal Resolution Attempt, Plaintiff raised the issue that he had been forced to change medications without his consent. On June 9, 2003, Plaintiff received a response to this Informal Resolution Attempt, denying his requested relief.

## D. CAUSE OF ACTION

Plaintiff attaches true and accurate copies of the Informal Resolution Attempt

and the response as Exhibit 7. Plaintiff proceeded through Step I and Step

II grievances in a timely manner in accordance with the grievance policy

of the Colorado Department of Corrections. In both the Step I and Step II

grievances, Plaintiff's request for relief was denied. Plaintiff attaches

true and accurate copies of the Step I and Step II grievances, with their

respective responses, as Exhibits 8 and 9, respectively.

43. On or about September 4, 2003, Plaintiff timely filed a Step III

grievance. Plaintiff received a response to this Step III grievance, on or

after October 4, 2003, in which the Step III grievance officer denied

Plaintiff's request for relief and stated that Plaintiff had exhausted his

administrative remedies with respect to the issue raised. Plaintiff attaches

true and accurate copies of the Step III grievance and the response to that

Step III grievance as Exhibits 10 and 11, respectively.

### Justiciability

44. Plaintiff continues to be recommended for participation in the Sex

Offender Treatment and Monitoring Program. As such, Colorado Department of

Corrections administrative regulations require Plaintiff to participate in

the Sex Offender Treatment and Monitoring Program in order to be eligible

for placement in Community Corrections.

45. Paintiff continues to be required by the Colorado State Board of

Parole to participate in Phase II of the Sex Offender Treatment and Monitoring

Program in order to be considered by the parole board for release to parole.

46. Upon information and belief, in order to be eligible for

participation in Phase II of the Sex Offender Treatment and Monitoring

Program, Plaintiff would be required to sign a TC Contract and submit to

4.8

### D. CAUSE OF ACTION

the condition described in paragraph (16) above, requiring him to comply
with recommended medications as a condition of his participation in such
treatment.

### Involvement of Defendants Stommel and Ortiz

47. While in his position as Sex Offender Treatment and Monitoring
Program Administrator or the equivalent thereof, Joe Stommel failed to ensure
a practice and/or policy was in place in the Sex Offender Treatment and
Monitoring Program which would have required due process protections before
Plaintiff could be compelled to submit to the administration of unwanted
medication as a condition of his participation in required sex offender
treatment.

48. As Executive Director of the Colorado Department of Corrections,
Joseph Ortiz failed to ensure that a practice and/or policy was in place
which would have required due process protections before Plaintiff could
be compelled to submit to the administration of unwanted medications as a
condition of his participation in required sex offender treatment.

### First Claim for Relief

49. Plaintiff incorporates by reference the allegations in paragraph
(2) through (48) inclusive, as if fully set forth herein.

50. During all times relevant to the incidents described herein,
Plaintiff had a well-established liberty interest in avoiding the
administration of unwanted medication.

51. The actions or omissions of the Defendant's subjected or caused
the Plaintiff to be subjected to the deprivation of his protected liberty
interest in avoiding the administration of unwanted medication, without due
process protections.

### D. CAUSE OF ACTION

52. As a direct result of the defendant's actions or omissions, Plaintiff suffered the denial of his Fourteenth Amendment right to avoid the administration of unwanted medication, migraine headaches, rashes on his arms loss of appetite, sleep difficulties, complications with a cold that led to a lung and urinary tract infection, irritibility, paranoia, confusion, and aggression.

53. The actions of Defendants Dunlap, McCullar, and Martinez in subjecting Plaintiff to the administration of unwanted medication without first providing Plaintiff with due process protections violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

54. The failure of Defendants Stommel and Ortiz, as final policy makers, to implement a practice and/or policy ensuring Plaintiff would receive due process protections prior to his being compelled to submit to the administration of unwanted meidication violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Overly Broad and Unreasonable Restrictions on Protected
Liberty Interest, in Violation of Fourteenth Amendment
2.   Claim Two: Right to Avoid Unwanted Medications.

Supporting Facts:

55. The actions and administrative policy underlying the actions of defendants, as applied to Plaintiff, restricted Plaintiff's right to avoid unwanted medication in an overly board manner not reasonably related to legitimate penological interests, thereby violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

56. Plaintiff incorporates by reference the factual allegations in paragraphs (2) through (48) inclusive, as if fully set forth herein.

57. Plaintiff is required to participate in sex offender treatment in order to be eligible for parole.

58. The Colorado Department of Corrections' Sex Offender Treatment and Monitoring Program ("SOTMP") has a policy of requiring sex offenders as a condition of participating in Phase II sex offender treatment to comply with recommended medications when it has been determined, after evaluation from a DOC psychiatrist or physician, that a specific medication may enhance the offender's ability to benefit from treatment and/or reduce the offenders risk to re-offend. ("Medication Policy").

59. In order to participate in Phase II sex offender treatment, Plaintiff was required to sign a treatment contract. This treatment contract set forth the Defendant's medication policy as follows: "You shall comply with recommended medications when it has been determined, after evaluation from a DOC psychiatrist or physician, that a specific medication may enhance your ability to benefit from treatment and/or reduce your risk of re-offense."

(Rev. 4/15/02)                    5

## D. CAUSE OF ACTION

### Facts Concerning the Defendant's Policy

60. The SOTMP policy mandating offender compliance with recommended administration of selective serotonin reuptake inhibitors (SSRIs) such as Zoloft and Prozac are being used for the purpose of reducing an offender's deviant fantasies and/or their sex drive.

61. The use of SSRIs such as Zoloft and Prozac for the purpose of reducing sex drive and/or deviant fantasies constitutes the use of medications that are approved by the Federal Drug Administration, for purposes other than those for which these medications are approved for.

62. The SOTMP medication policy contains no written requirement for the determination of whether such a recommended medication proves to be clinically effective on a case-by-case basis after it has been prescribed.

63. Upon information and belief, the SOTMP and the Defendants assert that they bear no responsibility for evaluating the effects of recommended medication on an offender's ability to benefit from treatment and/or on the offender's risk to re-offend, regardless of whether the offender is forced to comply with such medication as a direct result of the Defendant's medication policy.

64. The Defendant's medication policy contains no requirement or provision for the oversight or supervision of the administration of recommended medications by psychiatrists or physicians under the control or direction of the SOTMP. Rather, the SOTMP and Defendants rely on physicians and psychiatrists employed by the Colorado Department of Corrections for such oversight and supervision.

65. Colorado state law prohibits the Colorado Department of Corrections from employing or contracting with any individual or entity to provide sex

### D. CAUSE OF ACTION

offender evaluation or treatment services unless such services offered by
the individual or entity conform to the standards established by the Colorado
Sex Offender Management Board. See Colo. Rev. Stat. § 16-11.7-106(1). State
law further requires any person or entity desiring to provide sex offender
evaluation and treatment services to apply for and be placed on a list of
persons approved by the Colorado Sex Offender Management Board to provide
such services. See Colo. Rev. Stat. § 16-11.7-106(2).

66. Upon information and belief, the SOTMP and Defendants rely on
physicians and psychiatrists employed by the Colorado Department of
Corrections who are not approved by the Colorado Sex Offender Management
Board as sex offender evaluation and treatment providers to make the
determination under the Defendants' medication policy that a recommended
medication may enhance an offender's ability to benefit from sex offender
treatment and/or reduce the offender's risk to re-offend.

67. Upon information and belief, the defendants' medication policy
contains no provision empowering the Defendants to specify or otherwise
control when an offender who is subject to the required compliance with a
recommended medication under the medication policy is seen or otherwise
evaluated or treated by psychiatrists or physicians employed by the Colorado
Department of Corrections concerning such medications.

68. The Defendants' medication policy contains no written provision
permitting an offender who is subject to required compliance with recommended
medication to refuse such medication outside the presence of the prescribing
physician or psychiatrist in the event that the recommended medication
produces serious side-effects for the offender.

69. The Defendants' medication policy is not limited to offenders who

5.2

### D. CAUSE OF ACTION

are mentally ill or who have been determined to represent a significant danger to themselves or others, but rather applies to any offender who, after evaluation by a physician or psychiatrist, when it is determined may benefit from treatment or a reduced risk to re-offend.

70. The Defendants' medication was and continues to be applied to Plaintiff while Plaintiff is incarcerated.

71. The Defendants' medication policy provides no alternative means for Plaintiff to exercise his right to avoid the administration of unwanted medication, short of termination from required sex offender treatment.

72. Ready alternatives exist to the Defendants' policy, including a potential policy whereby offenders voluntarily consent to the administration of medications, and whereby SOTMP staff coordinate with DOC psychiatrists and physicians concerning the administration of such medications.

73. Accommodation of Plaintiff's right to refuse the unwanted administration of medication would have negligible impact on guards, other offenders, and the allocation of state resources in general.

74. Plaintiff has not been diagnosed as suffering from any mental or medical condition that would cause him to be considered a significant danger to himself or to others.

75. The SOTMP has in the past conducted pilot studies concerning the use of SSRIs in conjunction with sex offender treatment. One such study report acknowledges that, "based on differences in side effects, some SSRI medications may be better tolerated that others." Despite the Defendants' knowledge concerning the difference in side-effects between various SSRI medications, the Defendants' medication policy contains no written provision for evaluating potential side-effects suffered by an offender subject to

5.3

### D. CAUSE OF ACTION

required complaince with recommended medication under the medication policy,
and the Defendants' medication policy fails to distinguish between the various
SSRI medications and their known side-effects.

76. Defendants' medication policy contains no written provision for
distinguishing between emotional and behavioral problems effected by an
offender of his own volition and those emotional and behavioral problems
resulting from the side-effects of recommended medicications.

77. The Defendants' medication policy permits therapists to evaluate
the behavior of offenders who are subject to compliance with recommended
medications pursuant to the medication policy, regardless of the
qualifications or training of said therapists concerning such medications,
and without regard for possible side-effects caused by such medications.

78. Upon information and belief, the Defendants' rely on a belief that
they are required by state law to conform to section 4.210 of the Colorado
Sex Offender Management Board's Lifetime Supervision Criteria as the basis
for their application of their medication policy to Plaintiff. Section 4.210
of the Lifetime Supervision Criteria, however, is applicable only to sex
offenders sentenced under the Colorado Sex Offender Lifetime Supervision
Act of 1998. Plaintiff is not sentenced under the Colorado Sex Offender
Lifetime Supervision Act of 1998.

79. As Sex Offender Treatment and Monitoring Program Administrator or
the equivalent thereof, Joe Stommel established, supported, or otherwise
failed to correct the Defendants' medication policy described in paragraphs
(58) through (78) above.

80. As Executive Director of the Colorado Department of Corrections,
Joseph Ortiz failed to take action to correct the Defendants' medication

### D. CAUSE OF ACTION

policy described in paragraphs (58) through (78) above.

### Second Claim for Relief

81. Plaintiff incorporates by reference the factual allegations set forth in paragraphs (2) through (48) and (57) through (80) inclusive, as if fully set forth herein.

82. During all times relevant to the incidents desrcibed herein, Plaintiff had a well-established liberty interest in avoiding the administration of unwanted medications.

83. The medication policy of the Defendants, as applied to Plaintiff, and the actions or omissions of the Defendants in applying said policy to Plaintiff, restricted Plaintiff's right under the Fourteenth Amendment to the United States Constitution to avoid the administration of unwanted medications.

84. The restrictions imposed by Defendants' actions or omissions on Plaintiff's Fourteenth Amendment right to avoid the administration of unwanted medication were overly broad and were not reasonably related to Defendants' legitimate penological interests.

85. The restrictions imposed by Defendants through application of their medication policy were imposed with the intention of restricting Plaintiff's Fourteenth Amendment right to avoid the administration of unwanted medication.

86. As a result of the restrictions imposed on Plaintiff's right to avoid the administration of unwanted medication by Defendants' medication policy and Defendants' actions or omissions, Plaintiff was required to submit to the unwanted administration of Prozac and suffered injuries of denial of his Fourteenth Amendment right to avoid the administration of unwanted medication without due process, migraine headaches, rashes on his arms, loss

### D. CAUSE OF ACTION

of appetite, sleep difficulties, complications with cold that led to a lung
and urinary tract infection, irritability, paranoia, confusion, and
aggression.

87. The Defendants' medication policy, as applied to Plaintiff, is overly
broad and imposes restrictions on Plaintiff's constitutional right to avoid
the administration of unwanted medication that are not reasonably related
to the penological interests of the Defendants, in violation of Plaintiff's
rights under the Fourteenth Amendment to the United States Constitution.

88. The actions of Denfendants Martinez, McCullar, and Dunlap in imposing
restrictions not reasonably related to legitimate penological interests upon
Plaintiff's Fourteenth Amendment right to avoid the administration of unwanted
medication violated the Plaintiff's rights under the Fourteenth Amendment
of the United States Constitution.

89. The actions or omissions of Defendant Stommel in establishing,
supporting, or otherwise failing to correct the Defendants' medication policy
of imposing restrictions not reasonably related to legitimate penological
interests upon Plaintiff's constitutional right to avoid the administration
of unwanted medication violated Plaintiff's rights under the Fourteenth
Amendment to the United States Constitution.

90. The failure of Defendant Ortiz to correct the Defendants' policy
of imposing restrictions not reasonably related to legitimate penological
interests upon Plaintiff's constitutional right to avoid the administration
of unwanted medication violated Plaintiff's rights under the Fourteenth
Amendment of the United States Constitution.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes **XXX** No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit: _____

2.  Docket number and court name: _____

3.  Claims raised in prior lawsuit: _____

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?): _____

5.  If the prior lawsuit was dismissed, when was it dismissed and why? _____

6.  Result(s) of any appeal in the prior lawsuit: _____

## F. ADMINISTRATIVE RELIEF

1.  Is there a formal grievance procedure at the institution in which you are confined?

    **XXX** Yes ___ No (CHECK ONE).

2.  Have you exhausted the available administrative remedies? Attach copies, if available.

    **XXX** Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff has exhausted all administrative remedies, and specicially avers such herein, as well as attaches copies of such.

(Rev. 4/15/02)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

1. Declare that the acts and omissions described herein violated Plaintiff's rights under the United States Constitution.

2. Declare that the SOTMP policy mandating compliance with recommended medications, as applied to Plaintiff, is overly broad and violates Plaintiff's rights under the United States Constitution.

3. Issue an injunction ordering Defendants Stommel, Ortiz, Dunlap, McCullar, and Martinez, their successors, agents, employees, and all persons acting in concert with them to:

   a. Immediately institute such changes as are necessary to the SOTMP policy requiring offender compliance with recommended medications in order to bring such policy into

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___JuLY 18, 2006___
(Date)

_Arthur Brindly_
(Prisoner's Original Signature)

### G. REQUEST FOR RELIEF

conformity with the constitutional rights of offenders to
avoid the administration of unwanted medications.

b. Ensure that Plaintiff receives due process
protections as required by law before any requirement is
imposed on Plaintiff to comply with the administration of
recommended medications.

c. Implement provisions for the oversight of mind-
altering medications to offenders subject to the SOTMP TC
policy mandating offender compliance with recommended
medications by a psychiatrist or physician employed
specifically under the direction and control of the SOTMP.

d. Enter written notations in Plaintiff's mental health
file admitting that therapists Dwight
Martinez and Burl McCullar lacked sufficient knowledge
and training to determine whether the emotional and
behavioral problems exhibited by Plaintiff following the
change in his medication from Zoloft to Prozac were the
result of side-effects associated with Prozac.

e. Expunge records of the Plaintiff's termination
and re-instate him at the SOTMP TC Phase II to the status
he was at prior to the change in his medication on November
26, 2002.

## CERTIFICATE OF SERVICE

I, Arthur Bundy, hereby certify that on _JULY 18_, 2006, I sent

a copy of this Unopposed Amended Prisoner Complaint to opposing counsel of

Record by delivering a true and accurate copy in an envelope addressed as

seen below to prison officials of the Kit Carso Correctional Center's Legal

Mail Window, with a withdrawal slip for sufficient First Class prepaid postage

through the United States Post Office.


James X. Quinn, Esq.
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, CO 80203


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true, accurate, and correct.


Respectfully submitted,

Arthur Bundy, 67766
KCCC – BA113
P.O. Box 2000
Burlington, CO 80807



**COLORADO BOARD OF PAROLE**
1600 W. 24th Street, Building 54
Pueblo, Colorado 81003
Telephone: (719) 583-5800
Fax: (719) 583-5805
Website: www.doc.state.co.us

Bill Owens
Governor

Allan F. Stanley
Chairman

Curtis W. Devin
Vice-Chairman

Board Members:
Deborah C. Allen
Daniel I. Miraflor
David L. Paul
Sharon Bartlett-Walker

September 3, 2003

Arthur Bundy #67766
KCCF/PO Box 2000
Burlington, CO 80807

Dear Mr. Bundy:

Reference is made to your recent correspondence in which you inquire about the possible outcome of your next parole hearing.

Please be advised that Considerations for parole are set forth under Colorado Revised Statute Title 17-22.5-404. These considerations will be reviewed at your hearing in May 2004.

You must remain report free and program compliant. Please continue to work closely with your case manager for guidance.

Respectfully,

A. F. Stanley
Chairman

AS/gg

xc:     File

EXHIBIT # 1

THE CROSSROAD TO FREEDOM HOUSE
Therapeutic Community at Arrowhead Correctional Center
P.O. Box 300
Canon City, Colorado 81215-0300

## TC CONTRACT

Having been granted the privilege of this treatment opportunity by my acceptance into The CrossRoad To Freedom House Therapeutic Community Program, I the undersigned client agree to the following terms and conditions:

1. That I will abide by all rules and regulations established by the DOC and the TC, including the following Cardinal and Basic Rules:

Cardinal Rules
   A) No use of drugs or alcohol.
   B) No violence or threats of violence.
   C) No stealing.
   D) No sexual acting out.
   E) No violating confidentiality.

Basic Rules
   A) No COPD violations.
   B) Acceptance of authority.
   C) Maintain acceptable personal appearance.
   D) Be punctual for all appointments and assignments.
   E) Be respectful of others and display good manners at all times.
   F) No physical horseplaying.

2. I understand the TC program to be highly structured and confrontive. I also understand that the therapeutic techniques of intense group therapy will be employed as an approach to solving my behavior problems. I understand that the following are aspects of the program:

   A) Most individuals who enter The CrossRoad To Freedom House have low frustration tolerance and poor impulse control related to their problematic behavior and/or chemical usage. Consequently, the structure of the environment in the TC is somewhat frustrating and often uncomfortable for the typical resident. This structure is designed to help you with these problems.

   B) Since my family or support system will be important in my recovery process, I will be expected to inform them of my past offenses and problems and include them in my relapse prevention planning. My primary therapist will be involved with this process. I will be expected to share my relapse cycle and personal change contract with my parole officer, family (support system), and/or community corrections center. You will be expected to invite family and/or community support persons to support education

1

EXHIBIT # 2.

meetings. If you do not have a support person in the community, you shall work with your primary therapist to identify, at a minimum, one individual who can provide support to implement your relapse prevention plan/personal change contract when you are released.

C)  I will be required to take psychological or other tests, which may include drug and alcohol screening, plethysmograph or the Abel Assessment, and polygraph examinations.

D)  All reading materials and pictures must be approved by staff. Certain reading materials or music with pornographic or violent content, or any material related to my deviant behavior will not be allowed in the TC.

E)  Because acknowledging and ridding myself of the secret lifestyle I have led is important to my recovery, my incoming/outgoing mail (with the exception of legal mail) will be opened and may be read.

F)  I will not be allowed to choose my roommate. Any roommate assignment can be changed by staff at any time.

G)  Areas that will be discussed in group include: my behavior (in group, the community, at work, etc.) information on my behavior from correctional records (PSIR, disciplinary reports, chronological notes, performance plans etc.) and homework and reading assignments (including daily thoughts/interactions journal).

H)  I will be held responsible for informing my primary therapist of all visits/visitors I receive and any significant life changes/events that may occur while I am a resident of The CrossRoad To Freedom House.

I)  The TC treatment team includes relevant work supervisors, instructors, and correctional staff.

J)  I understand that while I am involved in the treatment program at The CrossRoad To Freedom House, I will be treated with respect and dignity concerning confidentiality. I understand that I will provide the same respect and dignity to the other participants in the TC. I understand that it is a direct violation of the treatment contract for me to discuss the identity of other participants or any other information relating to personal issues of those also involved in the program. I understand that I am free to discuss the program in general and our treatment topics, as long as I do not identify other participants or their issues.

2.  I understand that I will be expected to contribute significant effort to the TC and that I will display a willingness to work towards assertive, not aggressive, communication with residents and staff. I will talk about my own thoughts, feelings and experiences and will be willing to be questioned about them. I will respect other residents' rights to talk about their thoughts, feelings

2

and experiences. I will not threaten or ridicule others, nor will I use sexual or racial slurs. I also understand that due to the sensitive nature of sexual issues, I have an obligation to be considerate of others in their presentation of sexual issues. I recognize that this is a difficult process and that, as a member of the treatment process, I have an obligation to show respect and support for others when discussing sensitive sexual matters.

I also understand that I will be expected to:

A)    Perform all work and treatment assignments given to me by the treatment program staff.

B)    Attend all groups, sessions, lectures/seminars and program activities as prescribed by treatment program staff.

C)    My conduct is to be appropriate and positive, both within the treatment program complex and the institution at large (visiting room, hallways, yard, etc.).

D)    Assist the treatment program staff in developing my individualized treatment plan, and follow that plan.

E)    I will be expected to make my treatment in the TC a priority in my life. The treatment schedule is intensive, other education and treatment programs may need to be postponed during the orientation and commitment phase of treatment.

F)    I will be required to work in TC assigned work areas and/or attend vocational classes as part of treatment.

4.    I understand that I will not receive any preferential treatment or extraordinary privileges for any reason.

5.    I understand that while participating in The CrossRoad To Freedom House my behavior, attitude, motivation and clinical treatment needs are subject to continual assessment. Consequently, staff may determine at any time that my continuation in the treatment program is not appropriate. I agree to abide by the recommendations made by the program staff.

A)    I understand that this Therapeutic Community treatment program is a recommended treatment program for me and will remain a recommended treatment program throughout my incarceration.

B)    I understand that I can be suspended or terminated from the Treatment Community based upon the consensus of treatment staff that I have failed to make sufficient and sustained progress towards my treatment goals.

C)    I understand that my failure to attend all assigned program groups, sessions, and activities (other than absences excused in advance by treatment staff) may result in my

3

termination from the TC program.

D)   I understand that I can be terminated from the program for violation of Cardinal TC rules. Breaking other Basic TC rules or other contract violations may also lead to my termination based on the clinical discretion of the treatment team.

E)   I understand that if I am convicted of a Class I COPD violation, I will be terminated immediately. Class II or III COPD violations may result in termination at the discretion of staff.

F)   I understand that if I am suspended from any component of the TC Program, I will be placed on Suspension Status. A team meeting will be scheduled to make a final decision regarding my program status.

G)   I realize that if I am terminated or withdraw from this program, it will be documented in the working and departmental files and the information will, be  available to the parole board. I also realize that I may be subject to reclassification as a result of my termination/withdrawal, as well as possibly lose other privileges as deemed necessary.

6.   If I wish to withdraw from the TC, I will be expected to inform the staff in writing and discuss my decision with staff and residents as directed by my primary therapist.

IN ADDITION, SEX OFFENDERS WHO PARTICIPATE IN THE TC PROGRAM WILL BE EXPECTED TO COMPLY WITH THE FOLLOWING CONDITIONS:

1.   You will have no contact with any victims of your sexually aggressive behavior unless approved in advance and in writing by the Sex Offender Treatment and Monitoring Program (SOTMP) Team. Contact includes physical, visual, written, and telephone contact. You also will not directly or indirectly encourage anyone else to have contact with any of your victims. If you wish to be considered for an exception, you must submit a written request to your primary therapist explaining the reasons you are requesting contact with your victim, nor will you have contact with victim groups without the treatment teams consent. Your primary therapist will staff your request with the SOTMP Team.

2.   You will never use the last names of your victims or anyone related to your victims during any group discussions (victims are entitled to confidentiality).

3.   You will cooperate with any requests from your victims to obtain your status regarding any sexually transmitted diseases including HIV.

4.   The State of Colorado Sex Offender Management Board (SOMB) has written statewide standards that state in part, **"sex offenders should have no contact with children, including their own children, unless approved in advance and in writing by the prison treatment provider"** *(part 3.511B)*. While in SOTMP you will comply with this restriction of your contact with children. This standard is designed to protect children. The SOMB also

establishes provisions for what offenders need to accomplish in treatment before any contact between offenders and children can be approved by treatment providers. A copy of these requirements is available from your therapists. (SOMB is a legislatively created body who has the authority and responsibility to write statewide standards for providers of sex offense specific treatment. Treatment providers are obligated to abide by these statewide standards and DOC is required by law to employ only those providers who adhere to them.)

5.     SOMB State Standards state, "Sex Offenders shall not date or befriend anyone who has children under the age of 18 unless approved in advance and in writing by the prison treatment provider, *(part 3.511C)*." If you currently have a romantic or other personal relationship with an adult who has children, you will need to develop a safety plan that must be approved by your therapists. Your safety plan may include discontinuing the relationship. If you are currently visiting with or are having other contact with children you will need to stop. You will need to work with your therapists to write a letter to the child's guardian explaining this change. This letter will be shared with your primary therapist and perhaps your peers. After you receive feedback, you will give the letter and a stamped addressed envelope to the therapist who will mail it out. The therapist will include with your letter information which will help the people you have been having contact with to understand the basis for the no contact policy. On rare occasion a single exception to the no contact provision of our contract may be approved based on specific therapeutic needs of the child. Exceptions must be staffed by your primary therapists with the SOTMP Director or designee.

6.     You shall not access or loiter near children in the visiting room or participate in any volunteer activity that involves contact with children except under circumstances approved in advance and in writing by the SOTMP Team. If you wish to be considered for an exception, you must submit a written request to your primary therapist and explain the reason for your request. Your primary therapist will staff your request with the SOTMP Program Director or designee.

7.     You shall not have any material related to your sexual abuse cycle, or any pornography/sexually explicit materials in your possession, nor will you look at any pornographic/sexually explicit materials at any time. You will not watch sexually provocative television shows nor listen to music or watch other television shows that support your sexual abuse cycle. This includes visual, auditory, telephonic, or electronic media, and computer programs or services that support your sexual abuse cycle. You shall not patronize or visit any place where such material or entertainment is available. You shall not utilize "900" or adult telephone numbers or any other sex-related telephone numbers or make sexually provocative phone calls.

8.     Other special conditions related to your sexual abuse cycle may be imposed by the SOTMP Team. This may include restricting you from high-risk situations and limiting your access to potential victims.

9.     You will comply with any DOC or State requirements for blood testing, registration and sexually transmitted diseases.

10.    You will not be abusive or excessively controlling in any way towards members of your family,

group members, or others. You will also make every effort not to manipulate people as a way to avoid dealing with your problems or to avoid taking responsibility for your actions.

11. If you are involved in, or in the past have been involved in, any type of mental health treatment by someone outside the Department of Corrections, you will need to sign a Release of Information Form so that we can communicate with that therapist about your treatment in this program as well as to find out what you have been working on.

12. You will inform your therapist of any significant events in your life such as deaths, parole plans, changes in relationships, marital status, DOC infractions, court actions, dependency and neglect petitions, compliance with medical treatment, etc.

13. You shall comply with recommended medications when it has been determined, after evaluation from a DOC psychiatrist or physician, that a specific medication may enhance your ability to benefit from treatment and/or reduce your risk of re-offense.

14. You shall develop a relapse prevention plan (Personal Change Contract) which will be shared with your parole officer, approved treatment provider, family (support system), and/or community corrections center.

15. If you are a candidate for parole, you shall submit your parole plans to your primary therapist for review and approval 60 days prior to your parole hearing.

16. If you have discretionary parole which can result in a discharge of your sentence while incarcerated, you shall actively seek and accept parole.

17. The SOTMP believes that sex offenders can be more safely returned to the community if they transition back into the community with supervision, treatment, and support. We believe community corrections placements and parole can provide these transition components. In order to receive a positive recommendation for community corrections placements and parole, you must meet the following:

    a. You must be actively participating in phase II and applying what you are learning.

    b. You must have completed non-deceptive polygraph assessments on your deviant sexual history. If you have taken a recent monitoring polygraphs exam, it must also be non-deceptive.

    c. You must have completed a comprehensive Personal Change Contract which is approved by the SOTMP Team.

    d. You must have, at a minimum, one identified support person who has attended family/support education and has reviewed and received a copy of your Personal Change Contract.

6

    e.    You must be practicing relapse prevention with no institutional acting out behaviors within the last year.

    f.    You must be able to be supervised in the community without presenting an undue risk to public safety.

    g.    You must be compliant with any DOC psychiatric recommendations for medication which may enhance your ability to benefit from treatment and/or reduce your risk of re-offense.

19.    If you will be discharging your sentence, you shall submit a discharge plan to your primary therapist 6 months prior to your discharge date.

## RESPONSIBILITIES OF THE THERAPIST

As a resident of the TC, I understand that my input is important and valued; however, in all matters the final responsibility for and authority over the Therapeutic Community belongs to the staff.

The treatment team will be responsible for:

1.    Keeping confidentiality within the following guidelines:

    A)    Information will be given to the correctional/support system. This includes: case managers, parole officers, the Parole Board, community correction centers, and other professionals who become responsible for providing for your mental health treatment. The information may include: attendance, level of participation, motivation, deviant sexual history, relapse prevention information, polygraph results, personal change contract, problem areas, treatment plan and summary, or general progress, and will not require your additional written consent. Even after you complete or are terminated from this program, this information on your past participation and your current treatment status may be released.

    B)    The behavior of sex offenders is extremely dangerous and severely traumatic to victims. As a result, we believe that offenders should waive their rights to confidentiality and agree to allow victims, victims' immediate families, and victims' guardians to have information regarding your status in sex offender treatment and the quality of your participation. Without your additional consent, the program will release this information to these individuals if they specifically request the information.

    C)    Treatment staff may make more specific notes on my progress in the TC files. The TC files are only seen by the treatment team or my current group therapist.

    D)    Group therapists who are a not SOTMP staff will have access to my TC file only while they are the therapist of my group.

7

E) Any information regarding situations that could result in injury to myself or others (including security issues, escapes, etc.) cannot be kept confidential.

F) Therapists are legally required to report any child abuse. Any specific information indicating prior or current child abuse will be reported to the Department of Social Services.

G) Treatment staff will never give information to inmates outside the TC program or to the general public without your additional written consent.

H) Videotapes are confidential and will not be released or shown to anyone who is not on the treatment team without your additional written consent.

I) Issues regarding group that are discussed outside of group (whether between group members or between a group member and the therapists) shall be brought up in the next group session.

J) The goal of this program is "No more victims". In an effort to prevent further victimization, information regarding your criminal patterns of behavior will be released to law enforcement. If you are suspected of committing a crime, treatment information may be shared with law enforcement officials for the purpose of providing public safety.

K) As the goal of the program is "No more victims", in an attempt to contribute to the advancement of knowledge about sex offenders and sex offense treatment, information which does not identify specific TC residents may be used for program evaluation and research.

2. Treatment staff are responsible for monitoring TC residents to make sure they are following the treatment contract and terminating those residents who fail to progress in treatment. Treatment staff has final responsibility for making any and all decisions regarding the Community. I understand that staff will discuss and verify my behavior with correctional staff. The staff will write a final evaluation of my participation in the Community that will include their treatment recommendations.

Acknowledgment

I have been informed and acknowledge that I have no rights of confidentiality regarding my treatment within The CrossRoad to Freedom House Therapeutic Community. I have been informed that whatever I tell the Treatment Team (the Treatment Team includes relevant work supervisors, instructors, and correctional staff) is not privileged or private within the Therapeutic Community. This includes all information about me and my past behavior as evidenced by my institutional file and other available sources. All resident information is Therapeutic Community information.

Staff agrees to keep confidentiality within the guidelines outlined and limited by this contract as stated in Responsibilities of the Therapists parts A through K. In making this decision, I understand that if

8

any such right of confidentiality or privilege of privacy exist or, subsequent to execution of this waiver, are held to exist by statute or rule of law, I hereby waive any and all such rights as they apply to my treatment at The CrossRoad to Freedom House Therapeutic Community.

I have been recommended for participation in The CrossRoad to Freedom House Therapeutic Community Treatment Program. Although there are certain privileges associated with participation in recommended programs, I understand that participation is voluntary and that I have the right to refuse treatment. I understand that the privileges associated with participation in recommended programs can include progressive moves, awarding of earned time, and additional privileges such as canteen, use of appliances, participation in recreational programs.

I have read, understand, and agree to all of the above. The CrossRoad To Freedom House program has been thoroughly and completely explained to me and any and all questions pertaining to the program have been answered to my complete satisfaction.


_____ 67766  02-02-00
Inmate Signature and DOC#            Date


_____  2/2/00
DOC witness                          Date              Rev. 10-1-99


9

DEPARTMENT OF CORRECTIONS
PSYCHIATRIC INDIVIDUAL CONTACT

Sec. 2. Psy. IC (Rev. 1/00)

**SUBJECTIVE**

Doesn't want to go off
Zoloft. Discussed process.
Very worried but did
agree.

**OBJECTIVE:**

alert, coop, verbal
organized
euthymic
O A 3

**ASSESSMENT:**

O-C traits
Person DIO NOS

**PLAN/ORDERS**

1. D/C Zoloft
2. Prozac 20mg po
3. 9 AM x 4mo.
4.
5.
6. RTC one mo
7.
8.
9.

PHYSICIAN _S. Dilley FNPC_

NURSE _Shebnern 11/24/2_

EXHIBIT # 3

| Offender Name (Last, First, MI) | DOC # | FACILITY |
|---|---|---|
| Bundy  Arthur | 6 7 7 6 6 | A C |

| Clinician | Other Clinicians | | | Date |
|---|---|---|---|---|
| 3 7 4 | 0 4 1 | | | 1 1 2 6 0 3 |

| Type of Contact | Length of Session | Participation Level | Goal Attainment Scale |
|---|---|---|---|
| 4 8 | 0 2 | P 3 | 9 9 |

Distribution:
31216 (R 1/00)    White – Medical    Canary – Pharmacy    Pink – Mental Health File    Goldenrod – Data Entry

= MENTAL HEALTH ====== ENTER MH INDIV CONTACTS ========== 01/07/2003 = Page 1

Doc No: 67766   Name: BUNDY, ARTHUR          AHCC/TC B  PRES FACIL
==================================================================================

Facility: AC  ARROWHEAD             Contact date: 01/07/2003

Clinician(s): 896  MARTINEZ         Program Code:

Type of contact: 1A  BRIEF CONT          Length of session: 02   1/2 hour

Participation level: 9 3   N/A/FAIR

Goal attainment scale: 99  NOT APPLIC      Status Code:   NOPROG

-----------------------------------------------------------
                         CLINICAL NOTE
-----------------------------------------------------------

Talke with inmate today. He indicated that he is cycling with the stress of
finally having support and the possibility of going to community . He indicated
that he is aware that he is not handling situation well and he is very
restless. He is not sleeping well and his appetite waxes and wanes. He
indicated that he thinks to some degree that it might be due to his change in
medication.

SIGNATURE _____

Please print, sign & file in the fourth section of the MH record!

EXHIBIT #4

= MENTAL HEALTH ======= ENTER MH INDIV CONTACTS ========== 02/13/2003 = Page 1

Doc No: 67766   Name: BUNDY, ARTHUR          AHCC/TC B  PRES FACIL
================================================================================
Facility: AC  ARROWHEAD            Contact date: 02/13/2003

Clinician(s): 896  MARTINEZ        Program Code:

Type of contact: 1A  BRIEF CONT       Length of session: 01   1/4 hour

Participation level: 9.3   N/A/FAIR

Goal attainment scale: 99  NOT APPLIC       Status Code:   NOPROG

--------------------------------------------------------------
               CLINICAL NOTE
--------------------------------------------------------------
Met with inmate to ask him how he was doing. He indicated that he feels a lot
more moody and is also feeling ill. He denies being suicidal/homicidial. He
indicated that he thought he was better able to deal with things on the
previous medication.

SIGNATURE

Please print, sign & file in the fourth section of the MH record!

EXHIBIT # 5

= MENTAL HEALTH ======= QUERY MH INDIV CONTACTS ========= 04/14/2003 = Page  1

Doc No: 67766   Name: BUNDY, ARTHUR          AHCC/TC B  PRES FACIL
==============================================================================
Facility: AC  ARROWHEAD                  Contact date: 04/14/2003

Clinician(s): 896  MARTINEZ         Program Code:

Type of contact: 1A  BRIEF CONT        Length of session: 01   1/4 hour

Participation level: 9 3   N/A/FAIR

Goal attainment scale: 99  NOT APPLIC        Status Code:   NOPROG

------------------------------------------------------------------
                    CLINICAL NOTE
------------------------------------------------------------------
Inmate indicated that he would like to see Dr. Smyrl because he feels that he
is not doing well with the medication Prozac. He indicates that he has to force
himself to eat, although, he appears to not have lost weight, and he is not
sleeping well, has had a bad headache for sometime now and he never experienced
this on the Zoloft. He feels the medication may be contributing to his
moodiness. I let him know that I would document and staff

SIGNATURE _____

Please print, sign & file in the fourth section of the MH record!

EXHIBIT # 6

DC Form 850-04A (11/02)

## COLORADO DEPARTMENT OF CORRECTIONS
### INFORMAL RESOLUTION ATTEMPT

Grievance #  1

FOR OFFENDER SERVICES

*C-CM-03/04/006*

| SECTION A | | | |
|---|---|---|---|
| Offender Name:<br><br>Arthur Bundy | DOC #:<br><br>67766 | Facility<br><br>KCCC | Cell House<br><br>AC-203 |

Subject of Grievance: The Sex Offender Treatment and Management Program (SOTMP)) forcing me to change my psychotropic medication from Zoloft to Prozac.

What is the basis of your complaint (Be specific & brief): At the time, I was a prime canidate for community corrections, now SOTMP has pulled their recommendation and I was terminated. There is documentation from SOTMP and ACC Medical, that Prozac stimulated my aggression, and caused migraine headaches. SOTMP had no right to force me to change medication and endanger my health, had no right to expect my to stay on Prozac for another month to see the psychiatrist about my concerns, had no right to prevent me from going to community corrections, and had no right to cover-up their negligence and wreckless endangerment of my mental health, at the expense of my institutional record.

Offender Signature: _Arthur Bundy_    Date: 05-02-03

Case Manager reviewed complaint:    Initials_____    Date _____

Staff response:




Staff Signature / Printed Name & Staff ID#: _____    Date: _____

What was decided (within policy limitations):

_____    I am satisfied with informal resolution shown above

_____    I have elected to file a Step I Grievance *(attach this form to Step I Grievance)*

_Arthur Bundy_
Offender Signature

Case Manager Signature    Date: _____

Original - Department File        Copies: Working File, Offender

Attachment "A"
Page 1 of 1

EXHIBIT # 7

601503-4112

May 22, 2003

Mr. Bundy the Sex Offender Treatment and Monitoring Program is not able to prescribe, or change any psychotropic medications. Based upon the TC Contract that you signed it states: <u>You will comply with taking prescribed medications when it has been determined, after evaluation from a licensed provider, that a specific medication may enhance your ability to benefit from treatment and/or reduce your risk of re-offense.</u> However, this is still your decision. Any changes in prescribed medications or concerns about medication side effects should be addressed with your primary therapist and your psychiatric provider.

You had informed your primary therapist that you felt some of your lack of appetite, sleep loss, headache, and moodiness may been a result of this and you had been recommended to see the psychiatrist when he returned to our facility. The SOTMP, however, has no control over the scheduling of psychiatrists.

*S. Michael Dunlap*

S. Michael Dunlap

*Arthur Bundy*

03 - 153

DC FORM 850-4A (8/99)

# COLORADO DEPARTMENT OF CORRECTIONS
## OFFENDER GRIEVANCE FORM
### STEP 1

| NAME Arthur Bundy | DOC NO. 67766 | FACILITY KCCC |
|---|---|---|

Instructions:
1. Fill out identifying data legibly in space provided;
2. Clearly state basis for grievance or grievance appeal;
3. Describe the attempts made to resolve the problem;
4. State specifically what remedy you are requesting;
5. Attach copy of prior step in grievance process.

REQUEST: On November 26, 2002, the Sex Offender Treatment and Monitoring Program, based on DOC AR 700-15, IV. D, changed my psychotropic medication from Zoloft to Prozac. DOC AR 700-15 IV. A. 2. a. and E., provide proper procedure for such a change. DOC AR 700-03 IV. B. 3. establishes that emergency psychiatric help is available, on call. My medical and treatment files can establish a pattern of distress associated with using Prozac, leading up to termination. DOC AR 700-03 IV. G. Establishes my right to refuse treatment (which I interpret to mean that I can refuse to change medications, as per C.R.S. 25-1-120(1)(f)). SOTMP and the Colorado Sex Offender Management Board do not have clearly outlined, a grievance procedure for sex offenders in a treatment environment, as per C.R.S. 25-1-120 (3) (a thru e), and C.R.S. 25-1-121 (1). Nor does SOTMP and CSOMB, have clearly outlined a procedure to both utilize and perscribe psychotropic medications, as per DOC AR 700-15 IV. A. 2a. to establish what exactly is meant by "clinically indicated" and how that is a necessary treatment tool. However, they do have under 4.200 Criteria for Successful Progress in Treatment in Prison...of the CSOMB, rule book for Lifetime Supervision Criteria, Criteria for the Standard 6. compliant with DOC psychiatric recommendations for medication. So, what governs this, and where do my rights get protected. I ask you to practice the accountility you preach. The liberty interest comes in the fact I was denied community corrections. The deliberate indifference is your attitude.

DATE: 06-09-03 OFFENDER SIGNATURE: John Bundy

RESPONSE: Mr. Bundy, after reviewing your grievance, I have determined that

Sex Offender Treatment and Monitoring Program therapists did not change your prescription from Zoloft to Prozac. The decision to change medications was made by the Director of Clinical Services. This decision applied to all inmates within DOC who were taking Zoloft. In the future, any complaints concerning psychiatric decisions, should be referred to the Medical Department or to the Clinical Team Leader.

Your termination from the Therapeutic Community was caused solely by your inappropriate behavior, not the change in medication. This is documented in a memo addressed to you, dated 4/21/03, indicating you were terminated for verbal and physical aggression. Specifically, you were intimidating another T.C. resident and creating the possibility of a fight.

Grievance denied.

If you are dissatisfied with the response to this Step 1 or Step 2 grievance, you may obtain further review by submitting the next step to your Case Manager or the Grievance Officer.

DATE: July 18, 2003    SIGNATURE: Burl McCullar

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: _____

DATE: _____ SIGNATURE: _____

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: 7-31-03 SIGNATURE: Arthur Bundy 67766

EXHIBIT # 8

20035   DISTRIBUTION:   White-Department File   Canary-Working File   Pink-Administrative Head   Goldenrod-Offender
ATTACHMENT "A"
Page 1 of 1

DC FORM 850-4B (10/02)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

| Assigned Grievance _____ | STEP 2 | _____ |
|---|---|---|

| NAME BUNDY, ARTHUR | DOC NO. 67766 | FACILITY KCCC - AC203 |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH COPY OF PRIOR STEP IN GRIEVANCE PROCESS.

REQUEST: SOTMP is not immune from civil action because it acted under "the color of the law", when it chose to change my psychotropic medication from Zoloft to Prozac, on 11-26-02. It was done based on DOC AR 700-15. I had the right to refuse to make the change, based on both DOC AR 700-03 and CRS 27-10-103 (6), in conjunction with CRS 25-1-120, the rights of patients. Both of which also spell of my right to be heard with regard to my concerns. SOTMP failed to properly monitor my behavior following the change in psychotropic medication, based on CRS 12-22-102(33). Between my treatment file and my medical file is clear evidence that I was in distress associated with taking Prozac. When I called attention to SOTMP of my belief that Prozac was causing my migraine headache, I was ignored. DOC AR 700-03, also spells out emergency procedures which SOTMP chose to avoid. First, I was deemed a strong canidate for community corrections placement, and then based on my behavior, I was denied that placement, and eventually terminated. Based on a contract that focuses solely on my accountibility as a patient, but effectively avoids any real accountibility on the part of SOTMP. CRS 25-1-120 and 25-1-121 spells out the means by which both SOTMP and it's patients can effectively held accountible, in lieu of the DOC grievance procedure, or in conjunction with it. The issues are a liberty interest, where I was denied the right to stay with Zoloft, and denied a hearing regarding both this issue and both my loss of a chance to go to community corrections and my subsequent termination from SOTMP. Deliberate indifference, because SOTMP made an arbitrary change in my medidation, failed to properly supervise that change, and then denied me emergency care. I request that SOTMP be accountible, and inform the Community Board and my family of their errors. I will ask the Federal Court for $1,000.00 a dollars a day, from the point 11-26-02, the change in drugs, until this issue is resolved.

| DATE: 07-31-01 | OFFENDER SIGNATURE _Arthur L. Bundy_ |
|---|---|

RESPONSE:

See attached response —

If you are dissatisfied with the response to this Step 1 or Step 2 grievance, you may obtain further review by submitting the next step to your Case Manager or the Grievance Officer.

| DATE: 8/25/03 | SIGNATURE/PRINT NAME & Staff ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: | SIGNATURE/PRINT NAME & Staff ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections to this grievance.

| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |
|---|---|

Original: Department File    Copies: Working File, Warden, Offender

601503-4113

ATTACHMENT "B"
Page 1 of 1

EXHIBIT # 9

**Step II Grievance C-CM-02/03-001B dated 7/31/01 (2003)**

Inmate Bundy, after reviewing your grievance, I have determined that the issues you raise in this
grievance have been answered in numerous informal resolutions, in a Step I Grievance, and a
previous Step II Grievance response.

Once again, the SOTMP did not order the change in your medication from Zoloft to Prozac.
That decision was made by the Chief Medical Officer, acting on behalf of the DOC.

When you complained of discomfort and irritability, the SOTMP staff referred you to the medical
staff and you in fact met with the prescribing psychiatrist about this on March 14, 2003. You did
not show symptoms of an emergency medical problem.

The level of supervision by your primary therapist and other therapists working in the TC did not
decline. In fact your contact with staff, when you began making complaints about not wanting to
go to Community Corrections, increased. Your primary therapist staffed your case with the
entire SOTMP team regarding your intention to stop taking prescribed medication. The team's
recommendation was that you put in a request to see Dr. Smyrl before you made that decision.
Your primary therapist and the treatment team, did in fact, listen to your statements that you were
not ready to go to community and your concerns that something would happen. The treatment
team convened a concept group, in which you were present, and addressed your concerns and
fears. During that group you strongly indicated that you were not ready to go to community, and
that you wanted to stay and continue working on your personal change contract.

The TC treatment team decided it was prudent to listen to your concerns and statements and to
remove your name from the list of eligible candidates for community corrections.

Because of your continuing aggressive behavior you were placed on "Notice Status." Your
behavior was carefully discussed with you, and you signed the "Notice Status" agreement
indicating that you would correct the problem behaviors. You continued the negative behavior
and were terminated from the program. This is documented in a memo to you dated 4/21/03.
You continued to act out in inappropriate ways and breaking TC rules which eventually led to the
team's decision to terminate you from the TC.

I remind you that classification is not a grievable issue and you do not have a right to be placed in
community corrections.

Grievance denied.

Joe Stommel
August 28, 2003

DC FORM 850-4B (10/02)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Assigned Grievance _____ STEP **3**

| NAME **BUNDY, ARTHUR** | DOC NO. **67766** | FACILITY **KCCC - AC203** |
|---|---|---|

| Instructions: | 1. | FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED; |
|---|---|---|
| | 2. | CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL; |
| | 3. | STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING; |
| | 4. | ATTACH COPY OF PRIOR STEP IN GRIEVANCE PROCESS. |

REQUEST: On April 21, 2003, I was terminated from SOTMP, for aggressive behavior that was deemed an implied threat. It's true. However, there are issues I have attempted to address with SOTMP, that warrants a hearing. Which SOTMP refuses to acknowledge through the grievance process, thus far. (1) On November 26th, 2002, I was forced to change my psychotropic medication from Zoloft to Prozac. Against my will. No due process, no clinically indicated need, no proper observation to protect my health from possible side-effects, and no opportunity to share in that treatment decision. I had been on Zoloft since September of 2000, with very positive treatment and personal results. By the end of 2002, I was considered a prime canidate for community corrections placement. The recommendation was formal on January 24th, 2003, and then rescinded on February 13th, 2003. On January 2nd, 2003, I complained to medical about constant pain and migraine headaches, which got worse about two weeks after the dosage of Prozac was increased March 14th, 2003. Telling SOTMP in April, that I thought Prozac was the cause of the migraines fell on deaf ears. I would call my reaction to Prozac, something like an allergic reaction. (2) Being no longer program compliant has kept me from attempting to be recommended for community corrections placement, and will likely keep me from being paroled. Forcing me to change medication and then refusing me access to immediate medical attention, is cruel and unusual punishment. No legal reason to change my medication or to decide to stay with what works, plus rescinding my recommendation for community and eventually my termination, without due process, when program compliance makes or brakes my potential for freedom, is an atypical and significant hardship, because of the liberty interests involed. Violations for the First, Fourth, Fifth, and Fourteenth, Rig Amendments, and the Eighth Amendment to the U.S. Consititution of America.

| DATE: **09-04-03** | OFFENDER SIGNATURE _Arthur Bundy_ |
|---|---|

RESPONSE:

---

If you are dissatisfied with the response to this Step 1 or Step 2 grievance, you may obtain further review by submitting the next step to your Case Manager or the Grievance Officer.

| DATE: | SIGNATURE/PRINT NAME & Staff ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: | SIGNATURE/PRINT NAME & Staff ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections to this grievance.

| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |
|---|---|

Original:  Department File          Copies:  Working File, Warden, Offender

ATTACHMENT "B"
Page 1 of 1

601503-4113

EXHIBIT # 10

**Anthony A. DeCesaro**

STEP III GRIEVANCE OFFICER
2862 S. Circle Drive, Suite 140
Colorado Springs, CO 80906-4122

October 9, 2003

RE: Grievance #C-CM03/04-006 (KCCC)

Dear Mr. Arthur Bundy #67766:

I have reviewed your Step III grievance that you filed with regard to SOTMP and other issues.

In your grievance you address multiple issues, in AR 850-04 you are only allowed to address one issue per grievance. in the future your grievance will not be addressed unless it pertains to a single issue. I will attempt to address the issue summarized in your Step III. First, Zoloft was taken off the DOC medical formulary and that was a decision by DOC medical department which was state wide and not at all related to your SOTMP issues. To be given a non-formulary medication requires a request by a physician and then that determination is made by the non-formulary committee; that is why staff was recommending that you see the psychiatrist. Also issues regarding side-effects of the medication change should have been presented to medical or the psychiatrist for evaluation or change in medication dosages. Next the issue of your termination from SOTMP program; the justification for termination was valid and even by your admission you state based upon your behavior the termination was justified. I could find no US Constitutional violation in the termination from the program. For your future reference, classification decisions are not grievable issues, see AR 850-04. I cannot recommend any relief in this matter.

It is your burden to prove your allegations stated in your step III grievance. I have reviewed the facts of this case and determined that you did not meet this burden. There was no corroborating evidence to provide proof of your allegations.

Your request for relief is denied. This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance that you filed: Informal Resolution Attempt, Step I Grievance, Step II Grievance, and Step III Grievance.

Sincerely,

Anthony A. DeCesaro
Step III Grievance Officer

Cc: working file
    Tom Kolle

EXHIBIT # 11