IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02490-MSK-CBS

ARTHUR BUNDY,

        Plaintiff,

v.

JOE STOMMEL,
JOSEPH ORTIZ,
MICHAEL DUNLAP,
BURL MCCULLAR, and
DWIGHT MARTINEZ,

        Defendants.

_____

**OPINION AND ORDER DENYING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Renewed Motion to Dismiss **(# 50)**, and the Plaintiff *pro se*'s response **(# 51)**.

According to the Plaintiff's Amended Complaint **(# 40)**, the factual averments of which the Court accepts as true for purposes of this motion, the Plaintiff is an inmate of the Colorado Department of Corrections ("CDOC"), having pled guilty to sexual assault in 1992. The Plaintiff contends that "[CDOC] administrative regulations, policies, and practices require Plaintiff to participate in the . . . Sex Offender Treatment and Monitoring Program ["SOTMP"] in order to be considered eligible for placement in Community Corrections." *Docket* # 40, ¶ 12. In addition, the Plaintiff contends that he "was informed by members of the Colorado State Board of Parole that

he must participate in the [SOTMP] in order to be considered by the parole board for release on parole." *Id.*, ¶ 13.

After completing the first phase of the SOTMP, the Plaintiff began Phase II in February 2000. To participate in Phase II, the inmate must sign a contract agreement to "comply with recommended medication when it has been determined . . . that a specific medication may enhance your ability to benefit from treatment and/or reduce your risk to re-offend." The Plaintiff alleges that he signed the contract "under duress" on February 2, 2000, *id.*, ¶ 18, and began treatment on February 24, 2000. On September 9, 2000, a CDOC psychiatrist diagnosed the Plaintiff with an obsessive-compulsive disorder, and prescribed Zoloft. In a somewhat inconsistent passage in the Amended Complaint, the Plaintiff alleges that he "agreed to accept the medication Zoloft," but "was compelled thereafter to submit to the continued administration of Zoloft." *Id.*, ¶ 22. The Plaintiff continued to take Zoloft until November 26, 2002, finding the drug to be "beneficial, with no serious side-effects."

In June 2002, the Plaintiff was advised by Defendant Dunlap that, due to CDOC policy changes, inmates receiving Zoloft would thereafter be receiving a substitute medication. The Plaintiff opposed the change, informing SOTMP officials of that fact. Defendants McCullar and Martinez did not advise him that he could refuse to take the substitute medication; rather, they encouraged him to comply with the requirements of the program so as to maximize his chances for community corrections placement. The Plaintiff was ultimately prescribed Prozac as a replacement for Zoloft, and despite his objections, he began taking Prozac. He states that had he refused to do so, he would have been deemed in violation of his contract and "subject[ ] to

2

possible removal from consideration for placement in Community Corrections and termination from Phase II treatment." *Id.*, ¶ 34.

The Plaintiff experienced a variety of adverse side effects from the Prozac, and advised the staff of these problems. At no time was he told he could choose to cease taking the drug, and indeed, on August 14, 2003, Defendant Martinez advised the Plaintiff that he was contractually obligated to continue to take the Prozac. At some unspecified point in time, the Plaintiff was "removed from consideration for placement in Community Corrections," allegedly as a result of statements by SOTMP staff that the behavioral problems he was experiencing were not related to the Prozac. On April 21, 2004, the Plaintiff made threats to another individual, resulting in his removal from the SOTMP and his transfer to another prison. Shortly thereafter, the Plaintiff was returned to Zoloft, and his side-effects vanished.

The Plaintiff's Amended Complaint asserts two causes of action: (i) a claim under 42 U.S.C. § 1983 that the Defendants deprived him of a liberty interest in avoiding the administration of unwanted medication without affording him Due Process; and (ii) a claim under 42 U.S.C. § 1983 that "the actions . . . of defendants . . . restricted Plaintiff's right to avoid unwanted medication in an overly broad manner not reasonably related to legitimate penological interests, thereby violating Plaintiff's rights under the Fourteenth Amendment."

The Defendants move to dismiss **(# 50)** both claims, arguing: (i) the Plaintiff has no liberty interest in sex offender treatment, parole, or community corrections placement; (ii) that the Plaintiff's complaint reflects a "mere disagreement with doctors"; (iii) that the Plaintiff's claims are barred by the statute of limitations; and (iv) that the Plaintiff's claims are moot.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Because the Plaintiff is *pro se*, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the requirement that

the Court read the plaintiff's pleadings broadly does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id.*

### B. Liberty interest in avoiding unwanted medication

The Defendants first argue that the Plaintiff has no liberty interest in parole, assignment to community corrections, or sex offender treatment. As the Plaintiff correctly notes in response, and as was made clear by the 10th Circuit in an earlier appeal involving this case, *Bundy v. Stommel*, 168 Fed.Appx. 870, 872 (10th Cir. 2006), the Plaintiff is not challenging his classification or placement. Rather, he is asserting a liberty interest in avoiding the unwanted administration of drugs,[1] recognized by the Supreme Court in *Washington v. Harper*, 494 U.S. 210, 221-22 (1990).

In *Harper*, the plaintiff inmate had, at first, consented to receive treatment involving antipsychotic medication; however, he later changed his mind and refused to continue taking the drugs. *Id.* at 214. The prison at issue had a policy allowing the forcible administration of antipsychotic measures, so long as such treatment was approved by a panel of prison administrators and outside physicians, following a hearing in which the inmate has notice and an opportunity to present evidence.[2] *Id.* at 215. The Supreme Court stated that it "ha[d] no doubt

---

[1] Arguably, there may be a dispute between the parties as to whether the Plaintiff's taking Prozac was actually involuntary. Although it appears to have been under protest, it is undisputed that the Plaintiff took the Prozac he was prescribed, and was not forcibly medicated in the strictest sense of that term. However, it is clear that the Plaintiff alleges that he was coerced into doing so under threat that his parole eligibility or access to community corrections placement would be adversely affected if he refused. Whether these threats occurred, and, if so, whether they were sufficiently coercive to overcome the Plaintiff's resistance to taking Prozac are matters of fact that fall outside the scope of a motion to dismiss.

[2] Approvals for forcible administration of medication initially lasted for seven days, and subsequent approvals were valid for 14 days. At the conclusion of each period, the panel had to

that . . . respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause," and that the boundaries of that right were informed by the circumstances of the inmate's confinement. *Id.* at 221-22. The Court's review of a prison policy permitting involuntary administration of medication is conducted under the familiar principles of *Turner v. Safley*, 482 U.S. 78 (1987). *Harper*, 494 U.S. at 223-24. Thus, this Court is required to consider whether CDOC's policies relating to forcible medication of the Plaintiff bears a valid and rational connection to a legitimate penological interest; the impact that policy has on inmates, prison officials, and the allocation of prison resources; and the availability of ready alternatives. *Id.* at 224-25.

Because the Plaintiff here appears to have a protectible liberty interest in avoiding the involuntary administration of medication in its own right, the Defendants' arguments that he lacks a liberty interest in parole, community corrections, or sex offender treatment are irrelevant. Indeed, this is the very crux of the 10th Circuit's prior ruling in this case, and the Defendants' subsequent assertion of these previously-rejected arguments is somewhat baffling. The 10th Circuit did leave unresolved the question as to whether the "choice" offered to the Plaintiff – taking the facts in the light most favorable to the Plaintiff, he was given the option to either "voluntarily" continue to take Prozac or forfeit parole eligibility – might shrink the scope of the Plaintiff's liberty interest to nothingness, but the Court finds nothing in the Defendants' Motion to Dismiss that raises this issue with any degree of specificity, and the Court refuses to consider that issue *sua sponte*.

---

review the written record to determine whether to re-authorize continued treatment. At the end of 180 days, the inmate was entitled to a new hearing before involuntary treatment could continue. *Id.* at 216.

The Court also rejects the Defendants' argument that the Plaintiff is merely asserting a difference in opinion as to the course of his proper treatment. The cases cited by the Defendants involve claims by inmates of deliberate indifference to their medical needs under the 8th Amendment, *citing, e.g. Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993), not claims arising under the Due Process clause as the Plaintiff asserts here. Indeed, reasoned to its conclusion, the Defendants' argument is revealed as nonsensical: <u>every</u> case involving involuntary administration of medicine to an inmate results from the inmate's disagreement with the treatment provider as to the desirability or efficacy of the medication. Yet the Supreme Court recognizes that an inmate has a protectible liberty interest in avoiding such unwanted medication. The fact that the Plaintiff disagrees with his physicians' opinions does not warrant dismissal of his Due Process claim.

The Defendants also argue that the Plaintiff's claim is untimely. In Colorado, claims under § 1983 must be filed within two years of accrual. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). The Plaintiff's claim accrued when the facts that would support the cause of action were or should have been apparent. *Id.* The Defendants argue that the date is in 2000, when the Plaintiff entered the SOTMP and began voluntarily taking Zoloft. This line of argument again demonstrates that the Defendants have misperceived the nature of the claim the Plaintiff is asserting. The Defendants might be correct that, if the claim is one turning on parole eligibility or access to sex offender treatment, the accrual date might be as early as 2000. But as the 10th Circuit explained, the actual claim asserted by the Plaintiff is one for violation of his right to be free from the <u>involuntary</u> administration of medication. Logically, then, that claim could not possibly accrue until such time as the Plaintiff refused to voluntarily continue taking medication. Although the Amended Complaint is somewhat inconsistent, taken in the light most favorable to

7

the Plaintiff and with due consideration of his *pro se* status, the Court interprets the Amended Complaint to assert that the Plaintiff *voluntarily* agreed to take Zoloft, and his refusal to take Prozac as a substitute occurred on or after November 26, 2002. Thus, the claim accrued as of that date, and the Plaintiff's initial Complaint **(# 3)**, which indicates that it was received by the Clerk of the Court on November 26, 2004, is timely.

Finally, the Defendants argue that the Plaintiff's claim is now moot, insofar as the Plaintiff has been returned to voluntarily taking Zoloft. The Plaintiff argues that, if he were to reapply to participate in SOTMP, he would return to the same position of being forced to take Prozac, and thus, his claims are capable of repetition. A defendant's voluntary cessation of a challenged practice does not automatically operate to moot a case. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000). Rather, a defendant asserting mootness bears the burden of showing that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

The Defendants argue that the Plaintiff "is parole eligible and has seen the Parole Board," and thus, the claim "that he is required to consume unwanted medications in order to be parole eligible is moot." However, the Defendants do not address the Plaintiff's assertion that his ability to participate in the SOTMP is predicated on his agreement to submit to taking Prozac over his objections. In some respects, this argument circles back to the Defendants' initial premise that the Plaintiff has no particular liberty interest in being permitted to participate in the SOTMP. If, indeed, the Plaintiff has no constitutional entitlement to participate in the SOTMP program, a persuasive argument could be made that the Defendants can constitutionally force him to choose between continuing to enjoy his right to avoid Prozac, albeit at the sacrifice of the benefits that

completion of the SOTMP might afford him; or to choose to re-apply for the SOTMP and give up his right to refuse to take Prozac. However, the initial premise of that argument is not squarely before the Court on the current record, and the Court declines to reach beyond the matters presented by the briefing to resolve such a critical question. It is sufficient to find that, on the present briefing, the Defendants have failed to carry their burden of showing that this case is moot. The Defendants are free to re-assert this argument, properly supported by fact and law, on a motion for summary judgment.[3]

## CONCLUSION

For the foregoing reasons, the Defendants' Renewed Motion to Dismiss **(# 50)** is **DENIED**.

Dated this 7th day of August, 2007

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

---

[3]The Court notes that, according to a letter **(# 56)** by the Plaintiff to the Parole Board, inexplicably filed on the docket of this case, the Plaintiff asserts that he will complete his sentence and be discharged in November 2008, regardless of whether he is awarded parole or assignment to community corrections. The Court has some doubt that discovery could be completed and the case briefed and adjudicated on the merits significantly in advance of that date. The parties may wish to devote their energies into fashioning a mutually amicable resolution to this case, rather than pursuing a lawsuit to conclusion simply to obtain relief that would be rendered moot at the time of the Plaintiff's upcoming release.